United States District Court
Southern District of Florida
West Palm Beach Division

Case No.: 9:25-cv-80007
Judge:

**Mr. Percy Canteenwalla and Mr. Giuseppe Russo**, *individually and on behalf of all others similarly situated*,

       Plaintiffs,

v.

**Lexyl Travel Technologies, LLC**,

       Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs Mr. Percy Canteenwalla ("Canteenwalla") and Mr. Giuseppe Russo ("Russo") submit this class action lawsuit against Defendant Lexyl Travel Technologies, LLC ("Defendant" or "Lexyl") for their scurrilous business practices whereby Defendant deceived and exploited Plaintiffs, their customers, and the purported class to unlawfully collect travel insurance fees for hundreds of thousands of transactions through deceitful negative billing practices.

As alleged herein, Defendant deceived and exploited Plaintiffs, their customers, and the purported class by unlawfully including travel insurance in each transaction by mis-representing such insurance as a free upgrade. Rather than allowing users to affirmatively opt-in to the additional charge – as required by federal regulation and Florida statute – Defendant automatically enrolled users in additional services, disguised the enrollment as an upgrade, and disguised the ability to opt-out of these additional services by obfuscating the option with greyed out text in a smaller sized font. As a result of Defendant's deceptive and unfair billing practices, each

transaction was accompanied by an undisclosed additional fee resulting in tens if not hundreds of millions of dollars in additional fees charged to the purported class.

Now, Plaintiffs bring this action, on behalf of themselves and all others similarly situated, for Defendant's violations of Florida's Deceptive and Unfair Trade Practices Act, Federal Regulations governing the sale of hotel rooms, Florida's statute governing registered sellers of travel, New York's Deceptive Acts and Practices statute, and the unjust enrichment they received through their deceptive negative billing practices resulting in tens if not hundreds of millions of dollars in additional fees paid to Lexyl by the purported class.

## PARTIES

1. Plaintiff Mr. Percy Canteenwalla is a citizen of the State of Florida and resides in Seminole County, Florida.

2. Mr. Giuseppe Russo is a citizen of the State of New York and resides in Queens County, New York.

3. Defendant Lexyl Travel Technologies, LLC, is a Florida Limited Liability Company with a principal address at 205 Datura Street, 10th Floor, West Palm Beach, Florida 33401 and a registered agent of Leticia Piloto Rodriguez at the same address.

4. Defendant Lexyl Travel Technologies, LLC, transacts and has transacted business within this district as well as through the United States and internationally since at least June 2010.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d), because: (1) the putative class action consists of at least 100 proposed class members; (2) Defendant is not a state, state official, or other governmental entity; (3) the citizenship of at least one putative class member is different from that Defendant; and (4) the

aggregate amount placed in controversy by Plaintiffs and the proposed class members' claims exceeds $5,000,000, exclusive of interest and costs.

6. The Court has personal jurisdiction over Defendant because Defendant does and has done business within the Southern District of Florida, numerous transactions have happened within the state, and importantly Defendant's own Terms of Service's choice of venue provision requires any lawsuit be filed in this district.

7. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District – specifically, numerous transactions completed by Defendant within the Southern District of Florida.

## DEFENDANT'S DECEPTIVE SALES TECHNIQUES

8. Defendant operates numerous websites whereby it acts as a middleware to allow hotel and/or travel services vendors to sell rooms and/or services at any posted rate.

9. Defendant's websites include, *inter alia*, "BookOnline.com", "hotelguides.com", "hotelplanner.com", "Hotels-Rates.com", and "Room77.com" (each a "Website", together, the "Websites") and allow customers to book hotel and/or travel services.

10. Upon navigating to any of the Websites, a customer can input their destination, the dates of travel, and the number of occupants for a room and the Website will return a list of hotels offering lodging in that area for the given timeframe.

11. A Website's results list numerous hotels from various hotel companies at a range of price points. From there, a customer selects a hotel and a room from a provided list.

12. Once a customer has selected their preferred accommodations, they are re-directed to the Website's booking portal where they enter their guest and billing details.

13. Unbeknownst to Defendant's customers, their booking portal automatically includes an "Upgraded Experience" which is just a hidden fee utilizing a negative billing practice. See Figure 1.



Figure 1., The Websites' "Upgraded Experience"

14. Each of Defendant's Websites' booking portals include bold text stating "**Benefits of Your Upgraded Experience**" which states, again in bold text: "**Congratulations! The total cost of your experience is now protected if unforeseen circumstances happen and you are unable to attend due to several covered reasons…**"

15. In smaller non-bold text, the "**Benefits of Your Upgraded Experience**" continues to say: "Downgrade your experience to no refunds and no exchanges for any reason." And, in even fainter text, provides for some price reduction.

16. The "**Benefits of Your Upgraded Experience**" appears below the customer's individual billing details and does not appear to be clickable.

17. This added charge was for Defendant's travel Insurance, a service provided by a third-party company, whereby a customer would be able to secure a refund for their out-of-pocket hotel costs if they were unable to follow through with their travel plans ("Travel Insurance").

18. This Travel Insurance costs each of Defendant's customers a fee based on the total cost of the accommodation they booked.

19. Each for Defendant's customers were automatically enrolled in the Travel Insurance through Defendant's deceitful conduct, charged an additional fee, and their ability to opt-out or exclude the Travel Insurance from their booking was obfuscated by Defendant.

20. The automatic enrolment in Defendant's Travel Insurance is a negative billing practice.

21. Defendant's customers are automatically enrolled in the Travel Insurance and Defendant's customers have to affirmatively opt-out of the Travel Insurance *but* the opt-out option is disguised – it is greyed out and accompanied by text in a smaller size font which says: "Downgrade your experience to no refunds and no exchanges for any reason."

**Florida's Deceptive and Unfair Trade Practices Act
and Canteenwalla's Specific Allegations**

22. Florida's Deceptive and Unfair Trade Practices Act (the "FDUTPA"), as codified at Fla. Stat. § 501.201, prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Id., at § 501.204.

23. The concept of "unfair and deceptive" conduct has been construed extremely broadly by Florida Courts and includes any unfair practice that offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

24. Importantly, the FDUTPA is inclusive of misrepresentations regarding goods or services, including inflating fares by adding fees that appear to be part of the cost of the goods or services sold.

25. Here, on December 22, 2024 Canteenwalla navigated to one of Defendant's Websites, bookonline.com and booked a hotel room for December 28, 2024 in Orlando, Florida.

26. In doing so, Canteenwalla used Defendant's booking portal discussed *supra* and his purchase was subject to Defendant's hidden fee and negative billing practice.

27. Specifically, Canteenwalla's booking included the "**Benefits of Your Upgraded Experience**" selection whereby he was charged an additional $51.38 for Defendant's "Travel Insurance."

28. Defendant unfairly charged Canteenwalla an additional fee for Travel Insurance but improperly deceived Canteenwalla by not disclosing that he was able to opt-out of this fee and not requiring his agreement to the additional services and fees.

29. The automatic enrollment in the Travel Insurance was done through deceitful means and a negative billing practice whereby the Travel Insurance was obfuscated by Defendant and required Canteenwalla to actively opt-out of the Travel Insurance *but* the opt-out option was disguised by greyed out text in a smaller sized font which said: "Downgrade your experience to no refunds and no exchanges for any reason."

30. Once Canteenwalla completed his transaction, he received a confirmation e-mail from Defendant's Website which included "Refund Protection" which was the Travel Insurance Canteenwalla was automatically enrolled in. Canteenwalla's Confirmation E-Mail attached hereto as Exhibit A.

31. Moreover, Canteenwalla's Transaction Receipt mis-represented that he had selected Defendant's Travel Insurance. Transaction Receipt stated: "[t]he above plan was chosen at 1:35PM CST on 22-Dec-2024 at the time of booking, from IP address 2a09:bac2:89a7:aa::11:175." However, this statement was disguised by greyed out text in a smaller sized font.

32. This misrepresentation that Canteenwalla selected Defendant's Travel Insurance is a <u>further</u> deceitful practice whereby Defendant is engaged in a deceptive practice in the conduct of commerce to pad its bottom line and attempt to misdirect its customers.

### New York's Gen. Bus. L. § 349 – Deceptive Acts and Practices Statute and Russo's Specific Allegations

33. New York's Deceptive Acts and Practices statute (the "NY Deceptive Practices Act"), as codified at NY Gen. Bus. L. § 349 is a consumer protection statute prohibiting "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York.]" <u>Id.</u>, at § 349(a).

34. Amended in 1980, the NY Deceptive Practices Act affords consumers a private right of action whereby "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." <u>Id.</u>, at § 349(h).

35. The scope of the NY Deceptive Practices Act is intentionally broad, applying to virtually all economic activity such that a plaintiff must only show a deceptive act or practice was directed toward consumers and that such act or practice resulted in actual injury.

36. Here, on December 19, 2024, Russo navigated to one of Defendant's Websites, hotels-rates.com and booked a hotel room for December 21, 2024 in Manhattan, New York.

37. In doing so, Russo used Defendant's booking portal discussed *supra* and their purchase was subject to Defendant's hidden fee and negative billing practice.

38. Specifically, Russo's booking included the "**Benefits of Your Upgraded Experience**" selection whereby he was charged an additional $68.03 for Defendant's "Travel Insurance."

39. Defendant unfairly charged Russo an additional fee for Travel Insurance and improperly deceived Russo by not disclosing that he was able to opt-out of this fee and not requiring his agreement to the additional services and fees.

40. Defendant unfairly charged Russo an additional fee for Travel Insurance and improperly deceived him by not disclosing that he was able to opt-out of this fee and not requiring his agreement to the additional services and fees.

41. The fee for Defendant's Travel Insurance was unfair under the NY Deceptive Practices Act because it utilized deceptive practices and unscrupulous business practice that inured to the Defendant's financial benefit to the detriment of Plaintiff Russo and the purported New York Subclass, as defined *infra*.

42. The automatic enrollment in the Travel Insurance was done through deceitful means and a negative billing practice whereby the Travel Insurance was obfuscated by Defendant and required Russo to actively opt-out of the Travel Insurance *but* the opt-out option was disguised by greyed out text in a smaller sized font which said: "Downgrade your experience to no refunds and no exchanges for any reason."

43. Once Russo completed his transaction, he received a confirmation e-mail from Defendant's Website which included "Refund Protection" which was the Travel Insurance Russo was automatically enrolled in.  Russo's Confirmation E-Mail attached hereto as Exhibit B.

44. Moreover, Russo's Transaction Receipt mis-represented that he had selected Defendant's Travel Insurance.  Transaction Receipt stated: "[t]he above plan was chosen at 9:16AM CST on 19-Dec-2024 at the time of booking, from IP address 47.230.82.180."  However, this statement was disguised by greyed out text in a smaller sized font.

45. This misrepresentation that Russo selected Defendant's Travel Insurance is a <u>further</u> deceitful practice whereby Defendant is engaged in a deceptive practice in the conduct of commerce to pad its bottom line and attempt to misdirect its customers.

**CLASS ALLEGATION**
**Class Definition**

46. Plaintiff Canteenwalla and Plaintiff Russo bring this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), on behalf of:

> All individuals and entities that were automatically enrolled in Defendant's Travel Insurance service at the time of their booking from December 2020 through Preliminary Approval (the "National Class").

47. The National Class (referred to herein as the Class and with all Subclasses as the Classes") excludes Lexyl, Lexyl's officers, directors, employees, all entities affiliated with Lexyl as well as counsel for all Parties and any member of the judiciary presiding over this action.

48. Plaintiff Russo brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), on behalf of:

> All individuals and entities residing in New York that were automatically enrolled in Defendant's Travel Insurance service at the time of their booking from the beginning of the applicable statute of limitations through Preliminary Approval (the "New York Subclass").

49. The New York Subclass excludes Lexyl, Lexyl's officers, directors, employees, all entities affiliated with Lexyl as well as counsel for all Parties and any member of the judiciary presiding over this action.

**Numerosity**

50. The exact number of class members is unknown and is not available to Plaintiffs at this time, but upon information and belief, there are tens of thousands, if not hundreds of thousands, of putative class members, and individual joinder in this case is impracticable if not impossible. Defendant operates the Websites and posts hotels in all fifty states as well as internationally.

51. Class members can easily be identified through Defendant's records and allowing this matter to proceed on a class basis will allow for the swift and efficient administration of justice.

### Commonality

52. There are numerous questions of law and fact common to Plaintiffs and the Classes members' claims and those questions predominate over any questions that may affect individual Class members. Common questions include, but are not limited to:

   a. Whether Defendant's Websites utilized negative billing practices to automatically enroll Plaintiffs and the Class in its Travel Insurance in violation of, *inter alia*, Fla. Stat. § 501.201 and/or NY Gen. Bus. L. § 349;

   b. Whether Defendant's Websites properly disclosed the inclusion of its Travel Insurance to Plaintiffs and the Class;

   c. Whether Defendant has been unjustly enriched;

   d. Whether Plaintiffs and the Class have sustained damages as a result of Defendant's alleged unlawful conduct and the measure of such damage;

   e. Whether Plaintiffs and the Class are entitled to injunctive and other equitable relief.

### Typicality

53. Plaintiffs' claims are typical of the claims of the Classes members because Plaintiffs booked hotel rooms through Defendant's Websites and were unfairly and deceptively charged a fee for Travel Insurance.

### Adequacy

54. Plaintiffs will fairly and adequately represent the Class and Subclasses and protect the Class members' interest in this lawsuit.

55. Plaintiffs have no interests antagonistic to those of the Class of Subclasses and Defendant has no defense(s) unique to Plaintiffs.

56. Plaintiffs have retained capable Counsel, experienced in complex and class action litigation

    f. Werner Hoffman Greig & Garcia is a nationally recognized leader in veterans' benefits litigation and plaintiffs' side civil litigation and has a history of providing skilled and judicious representation to a historically underrepresented groups;

    g. Florek Law, PLLC's managing attorney, Adam Florek, has extensive class action experience and has successfully represented dozens of classes of individuals in state and federal court.

### Superiority

57. Allowing Plaintiffs and the Classes members' claims to proceed via a class action is superior to all other methods of litigation. A class action would allow the Plaintiffs and the Class members' claims to be fairly and efficiently adjudicated because joinder of all parties is impracticable.

58. Further, it would be virtually impossible for the individual members of the Class of any Subclass to obtain effective relief because the cost of pursuing individual claims would exceed the value of what each class member would be expected to recover.

59. Even if individual Class members were willing and able to pursue individual actions, a class action would still be preferable because numerous individual actions would increase the time and expense of litigation given the complex legal and factual controversies presented in this Class Action Complaint.

60. Moreover, a class action would allow the Court: to efficiently resolve common questions of law and fact; minimize the logistical issues of thousands of simultaneous litigations; take advantage of the economy of scale thereby conserving judicial resources and allowing a single jurist to comprehensively supervise this matter – there would be no difficulty managing this lawsuit as a class action; and saving all Parties from the increased time, effort, expense, and risk of inconsistent judgements thousands of simultaneous lawsuits would entail.

## COUNT I
**Violation of Florida's Deceptive And Unfair Trade Practices Act**
*On behalf of Plaintiffs and the Purported National Class*

61. Plaintiffs reallege and incorporates the preceding paragraphs as if fully set forth herein.

62. This claim is brought pursuant to Florida's Deceptive and Unfair Trade Practices Act because the representations by Defendant in its Terms of Use for its Websites emanate from its principal offices located in Florida, and decision-making surrounding its products, services, and fees are made in Florida, and its Terms of Use explicitly states: "[These Terms of Use] and the transactions it contemplates shall be governed, interpreted, construed, enforced and performed in accordance with the Laws of the State of Florida, without regard to conflicts of laws principles"

63. The stated purpose of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

64. Plaintiffs and *all* Class Members are "consumers" and the transactions at issue in this Class Action Complaint constitute "trade or commerce" as defined by Fla. Stat. §§501.203(7) and (8). Florida Statute §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

65. Customers, consumers and the consuming public under the FDUTPA include Florida residents and non-residents of Florida, because Florida has a strong interest in regulating the conduct of companies headquartered within the state. There are no geographical or residential restrictions contained within the express language of the FDUTPA and it applies to Defendant regardless of where the underlying bookings occurred or where the underlying individual traveled.

66. In violation of the FDUTPA, Defendant employed deception, misrepresentation, and the knowingly concealed and obfuscated material facts in their sale of their travel accommodations including information on its Websites' booking pages related to its Travel Insurance.

67. The Defendant's concealment, suppression, or obfuscation of material facts as alleged herein constitutes unfair, deceptive and fraudulent business practices within the meaning of the FDUTPA.

68. As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts have been damaged and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial. In addition, Plaintiff and the Class seek equitable relief and to enjoin Defendant from further deceitful conduct, and reasonable attorneys' fees.

**COUNT II**
**Violation of Florida's Deceptive And Unfair Trade Practices Act**
*On behalf of Plaintiffs and the Purported National Class*

69. Plaintiffs reallege and incorporates the preceding paragraphs as if fully set forth herein.

70. This claim is brought pursuant to Florida's Deceptive and Unfair Trade Practices Act because the representations by Defendant in its Terms of Use for its Websites emanate from its principal offices located in Florida, and decision-making surrounding its products, services, and fees are made in Florida, and its Terms of Use explicitly states: "[These Terms of Use] and the transactions it contemplates shall be governed, interpreted, construed, enforced and performed in accordance with the Laws of the State of Florida, without regard to conflicts of laws principles"

71. The stated purpose of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* is to "protect the consuming public … from those who engage in unfair

methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

72. Plaintiffs and *all* Class Members are "consumers" and the transactions at issue in this Class Action Complaint constitute "trade or commerce" as defined by Fla. Stat. §§501.203(7) and (8). Florida Statute §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

73. Further, a claim under FDUTPA may also be based on rules promulgated pursuant to the Federal Trade Commission Act or the standards of "unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts." § 501.203(3).

74. 14 CFR §399.84 governs unfair and deceptive trade practices for, among other things, the sale of hotel rooms. Specifically, § 399.84(c) states that it is an unfair and deceptive practice for a "ticket agent ... [to] offer additional optional services in connection with [a] tour component (e.g., a hotel stay)... whereby the optional service is automatically added to the consumer's purchase if the consumer takes no other action."

75. It is prohibited for a booking agent to require a customer to opt-out of an additional fee – put another way, a consumer must affirmatively opt-in to the additional service or fee.

76. Defendants have committed a deceptive act or unfair practice by automatically including its "Travel Insurance" and requiring its Plaintiffs and the Class members to opt-out of such service and additional fees.

77. Defendant's conduct violates 14 CFR §399.84 and federal decisions thereunder which provide a standard of unfairness and deception, making Defendant's conduct a violation of FDUPTA pursuant to §501.203(3).

78. As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts have been damaged and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial. In addition, Plaintiff and the Class seek equitable relief and to enjoin Defendant from further deceitful conduct, and reasonable attorneys' fees.

**COUNT III**
**Violation of Florida's Deceptive And Unfair Trade Practices Act**
*On behalf of Plaintiffs and the Purported National Class*

79. Plaintiffs reallege and incorporates the preceding paragraphs as if fully set forth herein.

80. This claim is brought pursuant to Florida's Deceptive and Unfair Trade Practices Act because the representations by Defendant in its Terms of Use for its Websites emanate from its principal offices located in Florida, and decision-making surrounding its products, services, and fees are made in Florida, and its Terms of Use explicitly states: "[These Terms of Use] and the transactions it contemplates shall be governed, interpreted, construed, enforced and performed in accordance with the Laws of the State of Florida, without regard to conflicts of laws principles"

81. The stated purpose of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

82. Plaintiffs and *all* Class Members are "consumers" and the transactions at issue in this Class Action Complaint constitute "trade or commerce" as defined by Fla. Stat. §§501.203(7) and (8). Florida Statute §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

83. Further, a claim under FDUTPA may also be based on rules promulgated by another Florida rule or statute and Florida Law regulates travel agencies. See Fl. Stat. § 559.926 *et. seq*. Under Fl. Stat. § 559.9335(9), it is a violation to "misrepresent or deceptively represent" ... (c) "[t]he nature or extent of other goods, services, or amenities offered" ... or (d) "[a] purchaser's rights, privileges, or benefits." It is also a violation to "do any other act which constitutes fraud, misrepresentation, or failure to disclose a material fact." §559.9334(23).

84. Defendant is registered as a seller of travel in the State of Florida. Pursuant to § 559.934, "[a]cts, conduct, practices, omissions, failings, misrepresentations, or nondisclosures which constitute a violation of this part also constitute a deceptive and unfair trade practice for the purpose of § 501.201 administrative rules promulgated thereunder." As such, Defendant's violations of Chapter 559 are violations of FDUPTA.

85. As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts have been damaged and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial. In addition, Plaintiff and the Class seek equitable relief and to enjoin Defendant from further deceitful conduct, and reasonable attorneys' fees.

**COUNT IV**
**New York's Gen. Bus. L. § 349**
*On behalf of Plaintiff Russo and the Purported New York Subclass*

86. Plaintiff New York Gentlemen realleges and reincorporates Paragraphs 1 – 21, 33 - 60 as if fully set forth herein.

87. New York's Deceptive Acts and Practices statute prohibits deceptive acts or practices in the conduct of any business, trade or commerce and applies to virtually all economic activity.

88. Defendant is engaged in conduct directed at consumers within New York State, specifically it operates the Websites allowing consumers to browse, select, and book hotel accommodations domestically and abroad.

89. Defendant's websites and its Travel Insurance are materially misleading because it provides Travel Insurance, which appears to be included but in reality, is an additional service paid for by Defendant's customers.  Specifically, each of Defendant's Websites' booking portals include bold text stating "**Benefits of Your Upgraded Experience**" which states, again in bold text: "**Congratulations! The total cost of your experience is now protected if unforeseen circumstances happen and you are unable to attend due to several covered reasons…**" but deceptively obfuscating that this is an additional paid for service.

90. Defendant's Websites and its Travel Insurance materially mislead Plaintiff Russo and the Purported New York Subclass because Defendant deliberately deceived, mislead, and obfuscated that a fee was being charged and Defendant's Websites were designed to look like Travel Insurance was a feature included with the reservation and not an additional service being sold by Defendant.

91. As a direct and proximate result of Defendant's materially misleading website, advertising, and business practices Plaintiff Russo and the Purported New York Subclass paid for Travel Insurance that they would otherwise not have purchased.

92. As a direct and proximate result of Defendant's conduct, Plaintiff Russo and the Purported New York Subclass have been damaged and are entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.  In addition, Plaintiff and the Class seek equitable relief and to enjoin Defendant from further deceitful conduct, and reasonable attorneys' fees.

## COUNT V
### Unjust Enrichment
*On behalf of Plaintiffs and the Purported National Class*

93. Plaintiffs reallege and incorporates the preceding paragraphs as if fully set forth herein.

94. By unknowingly paying a fee to Defendant for Travel Insurance, Plaintiffs and members of the purported National Class conferred a real and monetary benefit upon the Defendant – a benefit they would not have conferred had they been aware of the fee or its purpose.

95. Defendant voluntarily and gladly accepted the real and monetary benefit Plaintiffs and members of the purported National Class conferred – what is more, Defendant solicited such benefit by deceptively and unfairly charging Plaintiffs and members of the purported National Class a fee for Travel Insurance.

96. Defendant has been enriched by way of the deceptively charged additional fees for Travel Insurance.

97. The enrichment of Defendant has come at Plaintiffs and members of the purported National Class expense because they have been charged deceptive fees for Travel Insurance.

98. It is unconscionable to allow Defendant to retain the fees paid for Travel Insurance because such fees are the result of their bad acts and come at the expense of Plaintiffs and members of the purported National Class.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiffs, individually and on behalf of above Classes of similarly situated individuals, prays for an Order as follows:

a. An Order certifying this action as a class action on behalf of the National Class and the New York Subclass;

b. And Order Appointing: Plaintiffs as the National Class Representatives; and Plaintiff Russo as the New York Subclass Representative;

c. Declaration that Defendant's actions, as set forth above, violate: Florida's Deceptive And Unfair Trade Practices Act and New York's Gen. Bus. L. § 349;

d. Declaring that Defendant was unjustly enriched by its unlawful conduct and ordering the disgorgement of all fees collected;

e. Awarding Plaintiffs and the Classes' members compensatory damages for each violation of Florida's Deceptive And Unfair Trade Practices Act and New York's Gen. Bus. L. § 349;

f. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Classes;

g. An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

h. Awarding Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable; and

i. All such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Respectfully Submitted By:

 /s/ *Adam Werner*
Adam Werner
Michael Hoffman
Werner Hoffman Greig & Garcia
3299 NW 2nd Ave
Boca Raton, Florida 33431
t: +1 800 320-4357
e: awerner@wernerhoffman.com
e: mhoffman@wernerhoffman.com


Adam Florek, *upon admission pro hac vice*
Florek Law, PLLC
636 Broadway, Suite 514
New York, New York 10012
t: +1 (929) 229-2268
e: aflorek@florekllc.com