**United States District Court**
**Southern District of Florida**
**West Palm Beach Division**

Case No.:  9:25-cv-80007-RS
Judge:  Hon. Judge Rodney Smith

**Mr. Percy Canteenwalla and Mr. Giuseppe Russo**, *individually and on behalf of all others similarly situated*,

    Plaintiffs,

v.

**Lexyl Travel Technologies, LLC**,

    Defendant.

             /

**PLAINTIFFS PERCY CANTEENWALLA AND GIUSEPPE RUSSO'S**
**MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW**

i

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

   a.   Defendant's Deceptive Business Practices ................................................. 3

   b.   Plaintiffs and the Classes were Deceived by Defendant's Deceptive and Unfair Practices 4

III.  STANDARD FOR CLASS CERTIFICATION ................................................. 5

IV.   ARGUMENT .................................................................................................... 6

   a.   This Matter Satisfies Rule 23(a)'s Requirements for Certification ................................... 7

      1.   The Class Is So Numerous That Joinder Of All Members Is Impossible Given The Nationwide Reach Of Defendant's Deceptive Advertisements ................................................ 7

      2.   Common Questions Of Law And Fact Predominate Over Any Individual Issues Because Defendant's Conduct Was Identical Across The Classes And Plaintiffs' Damages Are The Same As The Purported Class ................................................................. 8

      3.   Plaintiffs' Claims are Typical of the Classes' Claims Because They Arise from the same Deceptive Practice and are Based in the Same Legal Theory ................................. 11

      4.   The Plaintiffs Are Adequate Class Representatives Because Their Injuries Are Representative Of The Class And Class Counsel Is Capable Of Representing The Same ... 12

   b.   This Matter Satisfies Rule 23(b)'s Requirements for Certification ................................. 13

      1.   Common Questions of Law and Fact Predominate ..................................... 13

      2.   Class Resolution is Far Superior to Individual Litigation ............................ 14

   c.   The Court Should Permit Plaintiffs to Supplement Their Briefing And Defer The Response And Reply Deadlines Because Discovery is Underway ........................................... 15

V.    CONCLUSION ............................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997)........................................................... 15, 16

Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455 (2013) .................................. 13

Arreola v. Godinez, 546 F.3d 788 (7th Cir. 2008) ........................................................................ 8

Barnes v. Air Line Pilots Ass'n, Int'l, 310 F.R.D. 551 (N.D. Ill. 2015)........................................ 8

Busby v. JRHBW Realty, Inc., 513 F.3d 1314 (11thCir. 2008) ..............................................11, 13

Califano v. Yamasaki, 442 U.S. 682 (1979)................................................................................... 6

Carriuolo v. Gen. Motors Co., 823 F.3d 977 (11th Cir. 2016) ............................................... 10, 16

Cherry v. Dometic Corp., 986 F.3d 1296 (11th Cir., 2021) .......................................................... 8

City First Mortg. Corp. v. Barton, 988 So.2d 82 (Fla. Dist. Ct. App., July 16, 2008)................. 10

Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546 (11th Cir. 1986) ................................................... 8

Davis v. Powertel, Inc., 776 So. 2d 971 (Fla. Dist. Ct. App. 2000) ............................................. 10

Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697 (M.D. Fla. 2000)....................................... 7, 9

Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147 (1982)..................................................................... 5

In re Checking Acct. Overdraft Lit., 281 F.R.D. 667 (S.D. Fla. 2012)........................................ 13

Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332 (11th Cir.1984).................................... 10

Latman v. Costa Cruise Lines, N.V., 758 So. 2d 699 (Fla. Dist. Ct. App., Feb. 2, 2000)............. 10

Northrup v. Innovative Health Ins. Partners, LLC, 329 F.R.D. 443 (M.D. Fl., 2019).................. 9

Randy Rosenberg, D.C., P.A. v. GEICO Gen. Ins. Co., No. 19-61422-CIV, 2021 WL 4990313
  (S.D. Fla. Sept. 22, 2021)........................................................................................................ 7

Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010) ........................ 6

Stewart v. Winter, 669 F.2d 328 (5th Cir. 1982) ........................................................................... 9

Tershakovec v. Ford Motor Co., Inc., 79 F.4th 1299 (11th Cir. 2023).......................................... 15

Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442 (2016) ............................................................... 15

Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181 (11th Cir. 2003) .................................. 13

<u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338 (2011) ................................................................ 6

<u>Williams v. Mohawk Indus., Ins.</u>, 568 F.3d 1350 (11th Cir. 2009) ........................................... 9, 12

**Statutes**

Fla. Stat. § 501.201 ........................................................................................... 1, 6, 9, 11

NY Gen. Bus. L. § 349 ............................................................................................... 9, 11

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................... passim

Fed. R. Civ. P. 23(b) ........................................................................................ 6, 13

Fed. R. Civ. P. 23(c) ............................................................................................ 15

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Percy Canteenwalla and Giuseppe Russo (together, "Plaintiffs") respectfully move for certification of the following classes of Defendant Lexyl Travel Technologies, LLC's ("Defendant" or "Lexyl") customers who have suffered injury as a result of Defendant's deceptive and unfair trade practices. First, Plaintiffs seek certification of a nationwide class of:

> All individuals and entities that were automatically enrolled in Defendant's Travel Insurance service at the time of their booking from December 2020 through Preliminary Approval (the "National Class").

Plaintiff Russo also seeks certification of a New York subclass of:

> All individuals and entities residing in New York that were automatically enrolled in Defendant's Travel Insurance service at the time of their booking from the beginning of the applicable statute of limitations through Preliminary Approval (the "New York Subclass")

(together, the National Class and New York Subclass, the "Classes").

Plaintiffs believe that there is sufficient support for class certification at this time; however, discovery is still ongoing and at the time of this Motion, Defendant has neither responded to the documents requests nor Plaintiffs' interrogatories and the parties have yet to schedule any depositions. Accordingly, Plaintiffs request the opportunity to supplement their briefing and defer the response and reply deadlines.

## I.      INTRODUCTION

This matter stems from Defendant's intentional engagement in businesses practices that fly in the face of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), as codified at Fla. Stat. § 501.201. Through its network of travel booking websites, Lexyl automatically enrolled Plaintiffs, the Classes, and all of its customers into a paid refund protection program – touted as an "Upgraded Experience – which was really a paid for add-on service. Compl., ¶¶ 12-21. Rather than allowing users to affirmatively opt-in to the additional charge – as required by

federal regulation and Florida statute – Defendant automatically enrolled Plaintiffs and the Classes into this "Travel Insurance" without their affirmative consent, obscuring the opt-out option in greyed-out fine print. As a result, Plaintiffs and the members of the Classes were charged a hidden fee on each transaction, causing real, actual, and easily calculable damage; and, Defendant has pocketed tens, if not hundreds, of millions of dollars in additional fees at the expense of Plaintiffs, the Classes, and all of Defendant's customers.

These facts, and the facts alleged in the Complaint, make it clear that question of FDUTPA liability can and should be decided on a class wide basis. Here, Defendant's deceptive and unfair trade practices impacted individuals across the country touching potentially thousands if not tens of thousands of individuals, each of whom were unknowingly charged for Travel Insurance Each of the Plaintiffs and the Classes' members were subjected to the same sales tactics. Any decision on the merits will ask questions common to the Classes, and those questions will predominate the Classes. Moreover, Plaintiffs' claims and the claims of all similarly situated individuals arise from Defendant's consistent advertising practices and its uniform policies concerning the same further weighing in support of certification.

Accordingly, Plaintiffs move for class certification to protect members of the proposed class, individuals who have suffered as a result of Defendant's unfair and deceptive business practices. Plaintiffs believe that there is sufficient support for class certification at this time; however, discovery is still ongoing and at the time of this Motion, Plaintiffs have not received numerous documents requested from Defendant nor have they been able to take the depositions of key fact witnesses. Accordingly, Plaintiffs request the opportunity to supplement their briefing and defer the response and reply deadlines.

2

## II.    <u>BACKGROUND</u>

### a.  **Defendant's Deceptive Business Practices**

Defendant's business practices – the intentional inclusion of Travel Insurance via an unlawful negative option billing practice and obfuscating the ability to avoid such fees – are themselves violations of FDUTPA.  Defendant operates numerous websites including, *at least*, "BookOnline.com", "hotelguides.com", "hotelplanner.com", "Hotels-Rates.com", and "Room77.com" (each a "Website", together, the "Websites"), that operate as a middleware to book hotels and other travel accommodations.  <u>Compl.</u>, ¶¶ 8, 9.  Part and parcel to Defendant's Websites is its Travel Insurance.  This is displayed as an "Upgraded Experience," but in actuality is an add-on service, complete with additional fees added via negative option billing and disguised with greyed out text, in a smaller size font giving the option to "[d]owngrade your experience to no refunds and no exchanges for any reason."  <u>Id.</u>, at ¶¶ 12-21.  Accordingly, each of Defendant's customers is automatically enrolled in the Travel Insurance through negative option billing and charged an additional fee without the same being meaningfully disclosed.  <u>Id.</u>, at ¶ 19.

When a customer navigates to any of the Websites, they can enter their destination, travel dates, and the number of room occupants.  <u>Compl.</u>, ¶¶ 10-11.  The Website then generates a list of available hotels in the selected area for the specified timeframe, displaying options from various hoteliers at various price points.  <u>Id.</u>  After reviewing the list, a customer selects a hotel and room, and is redirected to the Website's booking portal, where they enter guest and billing information to complete the transaction.  <u>Id.</u>, at ¶ 12.

On the same booking portal, however, customers are unknowingly subjected to an additional charge disguised as an "Upgraded Experience."  <u>Id.</u>, at ¶ 13.  Each of the Websites' booking portals prominently displays bold text titled "Benefits of Your Upgraded Experience[,]" which proclaims: "Congratulations! The total cost of your experience is now protected if

3

unforeseen circumstances happen and you are unable to attend due to several covered reasons…" Id., at ¶ 14.  Yet, just beneath this bold and celebratory language, in significantly smaller and non-bold and greyed-out text, the message continues with a buried disclaimer: "Downgrade your experience to no refunds and no exchanges for any reason[,]" accompanied by event fainter text disclosing a modest price reduction. Id., at ¶ 15.  This section—styled to appear as a benefit—is located below the customer's billing details and is not obviously interactive or modifiable.  Id., at ¶ 16.

In reality, the added charge is for third-party Travel Insurance, an additional service that purports to reimburse customers for their hotel expenses if they cannot proceed with their travel plans. Compl., ¶ 17.  Each customer pays an additional fee – calculated based on the total amount of the customer's booking – resulting in a substantial additional charge to each customer and a windfall for Defendant.  Id., at ¶¶ 17-19.  Through this deceptive design, customers are automatically enrolled in the Travel Insurance without informed consent, and the only way to opt out is through a deliberately obscured option—presented in greyed-out, hard-to-read text and framed as a "downgrade."  Id., at ¶¶ 19-21.  Because this opt-out mechanism is so carefully concealed, most customers do not even realize they have been charged for this optional service until after they have completed the transaction.  Id., at ¶¶ 19-21, 29-30, 39-40, 43.

### b. Plaintiffs and the Classes were Deceived by Defendant's Deceptive and Unfair Practices

Each of the Plaintiffs used one of Defendant's Websites to arrange hotel accommodations during the 2024 Holiday Season.  On December 22, 2024, Mr. Canteenwalla used bookonline.com and booked a hotel room for December 28, 2024, in Orlando, Florida and, unbeknownst to him at the time, his reservation was subject to a hidden fee of $51.38 for Defendant's Travel Insurance through a negative option billing practice.  Compl., ¶¶ 25-27.  Similarly, on December 19, 2024,

4

Mr. Russo used another one of Defendant's Websites, hotels-rates.com, to book a hotel room in Manhattan, New York.  Id., ¶ 36.  Like with Mr. Canteenwalla, Mr. Russo's reservation was subject to an additional hidden charge of $68.03 for Defendant's Travel Insurance through a negative option billing practice.  Id., ¶¶ 37-39.

Plaintiffs and the Putative Class are not consumers suffering from buyer's remorse or who were dissatisfied with the product they purchased.  Each of the Plaintiffs' and the members of the Classes used one of Defendant's Websites, as described *supra*, and were duped into paying for an additional service that they were led to believe was included rather than a supplemental fee for Travel Insurance they did not want.

As a result of Defendant's deceptions, Plaintiffs filed this Lawsuit on January 2, 2025, as a result of Defendant's deceptive trade practices, and seek compensation for the hidden Travel Insurance fees they were charged.  On February 27, 2025, Defendant filed its Motion to Dismiss and thereafter, Plaintiffs filed their Response in Opposition; the Motion to Dismiss remains pending before the Court.

### III.   STANDARD FOR CLASS CERTIFICATION

The purpose of class action litigation is the efficient and economic administration of litigation.  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 155 (1982).  "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'"  Id., at 155 (quoting Califano v. Yamasaki, 442 U.S. 682, 699 (1979)).

Under Rule 23(a), a class may be certified if the following four requirements are met:

(1)     the class is so numerous that a joinder of all members is impracticable;
(2)     there are questions of law or fact common to the class;
(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

5

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398

(2010) (citing same).  A class action must also fit into one of the categories enumerated in Rule

23(b).  Rule 23(b) permits a class action to be maintained if: "the court finds that the questions of

law or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Supreme Court has emphasized that

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must

affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that

there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  Wal-Mart

Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

## IV.     ARGUMENT

Plaintiffs' claims are suited for class certification because Defendant treated Plaintiffs, all

the Classes' members, and their entire customer base, identically for the purposes of applying

FDUTPA.  All of the putative Classes' members were uniformly subjected to the same unfair,

deceptive, and downright deceitful business practices by Defendant during the relevant period and

indeed years before.  Plaintiffs satisfy each of the statutory requirements for certification of this

matter as a class action, and a class action is both ideally suited and superior to overwhelming the

Court with countless individual lawsuits to address the same issues, conduct the same discovery,

rely on the same testimony, all in search of the same judgement.

Absent certification of the Classes, the Classes' putative members may never have their

damages compensated or get redress for their injuries – essentially closing the door on justice and

rewarding Defendant's scurrilous business practices.  Moreover, this action will help ensure that

6

Plaintiffs and all other similarly-situated individuals have a means to hold Defendant accountable for its unfair business practices and compensate the Classes' members.

**a.   This Matter Satisfies Rule 23(a)'s Requirements for Certification**

1. *The Class Is So Numerous That Joinder Of All Members Is Impossible Given The Nationwide Reach Of Defendant's Deceptive Advertisements*

To satisfy the numerosity requirement, Plaintiff must show that each proposed Class is so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff "seeking class certification does not need to know the 'precise number of class members, but they 'must make reasonable estimates with support as to the size of the proposed class.'" Randy Rosenberg, D.C., P.A. v. GEICO Gen. Ins. Co., No. 19-61422-CIV, 2021 WL 4990313, at *5 (S.D. Fla. Sept. 22, 2021) (quoting Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 699 (M.D. Fla. 2000)). "Moreover, although there is no fixed numerosity rule, generally less than twenty-one proposed class members is inadequate, while more than forty is sufficient. Id., at *5 (citing Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)). Further, a court "may make common sense assumptions to determine numerosity." Barnes v. Air Line Pilots Ass'n, Int'l, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (citing Arreola v. Godinez, 546 F.3d 788, 796-7 (7th Cir. 2008)).

Here, the putative Classes are comprised of all individuals and entities that were automatically enrolled in Defendant's Travel Insurance from December 2020 through the present. Defendant operates multiple high-traffic hotel booking websites with nationwide reach, and the Complaint alleges – and common sense dictates – that tens of thousands, if not hundreds of thousands, of customers were affected by the challenged practices during the relevant period. There can be no serious dispute that Plaintiffs meet the numerosity requirements. The Class of potential plaintiffs is sufficiently large to make joinder impossible, not just impracticable. As a result of Defendant's conduct, an untold number of individuals were unknowingly enrolled in the

7

Travel Insurance, separated from their money, and forced to pay for a service they never intentionally selected.  As a result, the precise number of Class Members cannot be determined until discovery is produced by Defendant.

Further, the Eleventh Circuit has recognized that the class action device is particularly appropriate where – as here – defendants have engaged in uniform conduct affecting a large of consumers, and where the claims share common legal and factual issues. See, for e.g., Cherry v. Dometic Corp., 986 F.3d 1296, 1302-4 (11th Cir., 2021) (noting that ascertainability is satisfied when class membership can be determined and that administrative feasibility is not a requirement); Northrup v. Innovative Health Ins. Partners, LLC, 329 F.R.D. 443, 451 (M.D. Fl., 2019) (recognizing ascertainability requires an "objective criteria that allow[s] for class members to be identified in an administratively feasible way[.]").  Here, the class is ascertainable.

The Class is *easily* ascertainable because membership can be determined through objective criteria – whether the customer was automatically enrolled in travel insurance while using one of Defendant's Websites at any time since December 2020.  Defendant's electronic records, including booking and billing data, provide a reliable means of identifying class members.

2.  *Common Questions Of Law And Fact Predominate Over Any Individual Issues Because Defendant's Conduct Was Identical Across The Classes And Plaintiffs' Damages Are The Same As The Purported Class*

Rule 23(a)(2) requires a plaintiff show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" Williams v. Mohawk Indus., Ins., 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting Stewart v. Winter, 669 F.2d 328, 335 (5th Cir. 1982)).  "Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members." Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 700 (M.D. Fla. 2000).  "A sufficient nexus is established if the

8

claim or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory."  Id., at 700 (quoting Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir.1984)); Carriuolo v. Gen. Motors. Co., 823 F.3d 977, 984 (11th Cir. 2016).

### A.       Defendant's Violation of FDUTPA and NY Gen. Bus. L. § 349 Gives Rise To Common Issues of Law and Fact

The elements of a FDUTPA claim are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  Carriuolo v. Gen. Motors Co., 823 F.3d 977, 983 (11th Cir. 2016) (citing City First Mortg. Corp. v. Barton, 988 So.2d 82, 86 (Fla. Dist. Ct. App., July 16, 2008)).  "Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably. That is, '[a] party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.'" Id. at 984 (quoting Davis v. Powertel, Inc., 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000)) (alteration in original); see also Latman v. Costa Cruise Lines, N.V., 758 So. 2d 699 (Fla. Dist. Ct. App., Feb. 2, 2000), passim (recognizing that a plaintiff's spending of monies for what was advertised as a 'pass-through' charge but, defendant keeping those funds was sufficient to maintain a claim under FDUTPA).

The objective analysis that courts routinely employ to evaluate claims under FDUTPA is well-suited for class adjudication. The common questions that would "drive resolution" of this action include, at least:

a.       Whether Defendant's Websites utilized negative billing practices to automatically enroll Plaintiffs and the Class in its Travel Insurance in violation of, inter alia, Fla. Stat. § 501.201 and/or NY Gen. Bus. L. § 349;

b.       Whether Defendant's Websites properly disclosed the inclusion of its Travel Insurance to Plaintiffs and the Class;

c.       Whether Defendant has been unjustly enriched;

9

      d.      Whether Plaintiffs and the Classes have sustained damages as a result of Defendant's alleged unlawful conduct and the measure of such damage;

      e.      Whether Plaintiffs and the Classes are entitled to injunctive and other equitable relief.

Each of these questions can be resolved at summary judgment and/or during trial through common, class-wide proof.  Moreover, Plaintiffs will also rely on common evidence to demonstrate damages, which is the difference between each of the Classes' member's transaction cost and the additional Travel Insurance they were unknowingly sold.  See also Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1323 (11thCir. 2008) (finding commonality where the plaintiff brought suit against defendant as a result of fees charged for services never rendered).

Indeed, once the Court determines that Defendant's practice of automatically enrolling its customers in Travel Insurance without their informed consent and obfuscating the ability to opt-out of the same is unlawful under FDUTPA and NY Gen. Bus. L. § 349, the major question presented by this matter will have been resolved.  The material facts and questions of law are identical for the Plaintiffs and the purported Classes, such that proof and resolution of Plaintiffs' claims would be proof and resolution of the Classes' claims.  Thereafter, the only remaining questions will be the measure of damages and the injunctive relief, which themselves are questions common to the Classes.

Ultimately, the barrier of commonality is a low one and here it is overcome because the material facts and questions of law are identical for the Plaintiffs and the purported Classes.  During trial – or more likely summary judgment – Plaintiffs will rely on documentary evidence that illustrates Defendant's conduct and how it took advantage of the class through a common deception.  Therefore, a favorable adjudication of Plaintiffs' claims will conclusively establish a right of recovery for all Classes' members. Accordingly, the questions of commonality weigh strongly in favor of granting class certification.

10

3. *Plaintiffs' Claims are Typical of the Classes' Claims Because They Arise from the same Deceptive Practice and are Based in the Same Legal Theory*

The typicality requirement of Rule 23 means that the claims of the representative plaintiffs must be typical of the claims of the class. See Fed. R. Civ. P. 23(a) (3). Typicality exists where "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." Mohawk Indus., Inc., 568 F.3d at 1357 (internal quotations omitted).

Here, as described *supra*, Plaintiffs and the proposed Classes' members claims all arise from the same pattern of deceptive business practices – Defendant's inclusion of Travel Insurance without Plaintiffs or the Classes' affirmative consent via an unlawful negative option billing practice. Plaintiffs' injuries are typical of the proposed Classes' members' injuries as each was made to unknowingly pay an additional fee without their consent. And Plaintiffs' claims are typical of the claims of the Classes' members. Each of the Plaintiffs and the members of the National Class can maintain a claim for violation of FDUTPA; and Plaintiff Russo and the members of the New York Subclass can maintain a claim for violation of NY Gen. Bus. L. § 349.

Whether Plaintiffs can prove Defendant's conduct was unfair and deceptive and therefore ultimately succeed on their underlying claims is irrelevant at the class certification stage. The Purpose "of a Rule 23(b) (3) certification ruling is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently. Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 460 (2013) (quotations omitted). What matters now is that the facts and circumstances surrounding Plaintiffs' claims are typical of those of the Classes – were Plaintiffs and the Classes' members subjected to a deceptive, unfair, and unlawful negative option billing practice to unknowingly enroll them in the Travel Insurance? See In re Checking Acct. Overdraft Lit., 281 F.R.D. 667, 675 (S.D. Fla. 2012) (finding the typicality

11

requirement satisfied where the claims "were governed by common and materially uniform agreements"). Yes; that question must be answered in the affirmative. Accordingly, the typicality of Plaintiffs' and the Classes' member's claims and the facts surround the same weigh strongly in favor of granting class certification.

4. *The Plaintiffs Are Adequate Class Representatives Because Their Injuries Are Representative Of The Class And Class Counsel Is Capable Of Representing The Same*

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "The adequacy-of-representation requirement "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Busby, 513 F.3d at 1323 (quoting Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003)).

The named plaintiffs, Mr. Cantenwalla and Mr. Russo, can and will fairly and adequately protect the Classes' interests and seek compensation for their losses. Plaintiffs believed they were securing lodging during the holiday season but had no idea that they were deceptively sold unnecessary and unwanted Travel Insurance, having been duped into paying for same. Neither of the named Plaintiffs nor the purported Classes' members were informed that they were paying for the Travel Insurance – it was touted as an upgrade included in the base price and the disclaimer was camouflaged in significantly smaller, non-bold, and greyed-out text. Moreover, Plaintiffs have taken the affirmative steps of securing counsel and instituting this litigation in search of redress of their rights. This qualifies Plaintiffs as conscientious representatives and satisfies the adequacy of representation requirement.

Proposed Classes' Counsel, Adam Florek of Florek Law, LLC ("Florek Law") and Werner Hoffman Greig & Garcia, will also fairly and adequately represent the Class. The Proposed

12

Classes' Counsel are highly qualified attorneys with considerable experience representing classes of claimants. (See Exhibit A – Florek Law Firm Resume; Exhibit B – Werner Hoffman Greig & Garcia Firm Resume).  The Classes' Counsel are established attorneys who have litigated class action lawsuits and represented classes of claimants in other class actions.  Moreover, Adam Florek has been designated as class counsel in numerous class actions in state and federal courts.  See, Florek Law Firm Resume, Representative Matters.  Accordingly, the proposed Classes' Counsel is adequate and has the ability and resources to manage this lawsuit.

**b.  This Matter Satisfies Rule 23(b)'s Requirements for Certification**

As above, a class action must also fit into one of the categories enumerated in Rule 23(b). Here, Rule 23(b)(3).

*1.*   *Common Questions of Law and Fact Predominate*

Rule 23(b)(3) permits a class action to be maintained if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) ("The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)).   The predominance requirement of Rule 23(b)(3) is satisfied where common questions can be resolved with generalized proof and predominate over questions requiring individualized evidence.  Tershakovec v. Ford Motor Co., Inc., 79 F.4th 1299, 1306 (11th Cir. 2023).

As discussed *supra* in the Argument's Sec. (a)(ii), once the Court determines that Defendant's practice of automatically enrolling its customers in the Travel Insurance without their consent and obfuscating the ability to opt-out of the same, *the major question presented by this*

13

*matter*, the matter will have been resolved.  The material facts and questions of law are identical for the named plaintiffs and the purported Classes, such that proof and resolution of Plaintiffs' claims will be proof and resolution of the Classes' claims.  Thereafter, the only remaining questions will be the measure of damages and the injunctive relief, which themselves are questions common to the Classes.  This *is* predominance.

Defendant will likely argue that individual analyses are necessary regarding proposed Classes' members' level of deception, *i.e.*: whether the proposed Classes' members were actually deceived by Defendant's tactics; and the amount of damages incurred. However, neither argument is persuasive.

Neither anticipated argument is persuasive because individual reliance is immaterial. Tershakovec, 79 F.4th at 1311 ("[A] plaintiff asserting a FDUTPA claim need not show actual reliance on the representation or omission at issue." (quoting Carriuolo, 823 F.3d at 985)).  And importantly, "individualized damages calculations are insufficient to foreclose the possibility of class certification, especially when, as here, the central liability question is so clearly common to each class member." Carriuolo, 823 F.3d at 988.  Further, "[n]othing in [Rule 23] requires plaintiffs to prove predominance separately as to both liability and damages." Id., at 988.  Here, the fees charged for the Travel Insurance are calculated based on the total amount of the customer's booking and can be easily ascertained by examining Defendant's electronic records when they are eventually produced.

2.  *Class Resolution is Far Superior to Individual Litigation*

A class action is the most appropriate and expeditious method for the fair and efficient resolution of this lawsuit and the Classes' claims.  The alternative is an untold number of identical lawsuits whereby the Classes' members seek to determine the same questions posed in this lawsuit, overwhelming this and other courts, and running the risk of inconsistent determinations and unjust

14

results.  Moreover, here "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Amchem, 521 U.S. at 615 (cleaned up).

Here, as discussed repeatedly above, Plaintiffs' claims stem from Defendant's common and uniformly unfair and deceptive practices resulting in common wrongs and uniform injuries to Plaintiffs and the Classes' members.  Accordingly, class certification would avoid the need for unduly duplicative litigation which might result in inconsistent judgments concerning Defendant's practices.  Without Class Certification, this Court and indeed numerous courts across the county would hear numerous duplicative individual cases raising identical questions of liability and seeking identical redress for the Classes' members' damages.  Further, the Classes, Defendant, and the Court would be better served by allowing the Classes members to pool their resources and adjudicate a single matter as opposed to attempting to litigate thousands if not tens of thousands of individual suits.  Therefore, in the interests of justice and judicial efficiency, it is preferable to combine the litigation of all Classes' members' claims in a single lawsuit and address these issues in one fell swoop – evincing the superiority of the class mechanism to address the claims in this case.

### c.  The Court Should Permit Plaintiffs to Supplement Their Briefing And Defer The Response And Reply Deadlines Because Discovery is Underway

Rule 23(c) requires, "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c) (1)(A).  However, there is no set time when such an order must issue.

Here, there is scarcely an argument that this matter should not be adjudicated on a class basis: the purported class is so numerous that it is impossible to join all members in a single action; the questions of law and fact – Defendant's sales tactics and *inter alia*, the deception of Plaintiffs

and the Classes' members – are identical between the Plaintiffs and purported Classes; the named Plaintiffs and Class Counsel are motivated and capable of representing the Class's interests; and a single class action lawsuit is the most appropriate road to resolution of these issues.  However, there is still the need for discovery on class certification issues.  Presently, Plaintiffs have issued their initial discovery but, at the time this Motion was filed, Defendant has yet to respond.

Because the Court and Rule 23 requires this Motion be supported by evidence, the Court should permit the Parties to conduct discovery, *especially on class certification issues*; it should hold the instant motion in abeyance during such discovery period; and allow Plaintiffs to supplement this Motion and supporting Memorandum of Law accordingly.  The Court should also defer Defendant's response and Plaintiffs' reply until such discovery has concluded.

16

## V.    <u>CONCLUSION</u>

For the reasons articulated above, Plaintiffs respectfully request that the Court enter an Order: (1) certifying this lawsuit as a class action on behalf of the National Class and the New York Subclass; (2) appointing Plaintiffs Percy Canteenwalla and Giuseppe Russo as the National Class's Representatives; (3) appointing Plaintiff Giuseppe Russo as the New York Subclass's Representatives; (4) appointing Adam Florek of Florek Law, PLLC and Adam Werner and Michael Hoffman of Werner Hoffman Greig & Garcia, as Class Counsel; and (5) authorizing court-facilitated notice of this class action to the Classes. In the alternative, this Court should permit discovery to proceed and allow Plaintiffs to supplement this briefing as necessary, and defer response and reply briefing.

Dated: May 15, 2025                     Respectfully Submitted By:

*/s/ Adam Werner*
Adam Werner, Florida Bar No.: 0042883
Michael Hoffman
Werner Hoffman Greig & Garcia
3299 NW 2nd Ave
Boca Raton, Florida 33431
t: +1 800 320-4357
e: awerner@wernerhoffman.com
e: mhoffman@wernerhoffman.com

Adam Florek, *admitted pro hac vice*
Florek Law, PLLC
552 Seventh Ave, Suite 601
New York, New York 10018
t: +1 (929) 229-2268
e: aflorek@florekllc.com

17

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that a true and correct copy of the foregoing

instrument has been served upon all counsel of record in accordance with Local Rule 5.2(a) and

Florida Rule of Civil Procedure 1.280(a)(1) via CM/ECF.

18

# EXHIBIT "A"









**Advice Counsel Advocay**

**Florek Law, LLC** was founded in 2024.  Adam Florek, the Firm's managing attorney, founded the firm to handle clients' most important issues.  To that end, the Firm provides white glove legal services to small businesses, helping them manage their most important relationships and resolving disputes whenever they arise; and individual and class representation to real people who have been harmed by the callous acts of others.



**New York**

636 Broadway, Suite 514
New York, NY 10022

O: (929) 229-2268

**New Jersey**

11 Knollwood Dr.
North Caldwell, NJ 07006

O: (929) 229-2268

**Attorneys Admitted in New York, New Jersey, and Illinois**



## ATTORNEY PROFILE

# Adam Florek

### MANAGING ATTORNEY

---

+ 1 973 476-5650
Aflorek@florekllc.com

Adam Florek founded Florek Law to help his clients build their ideas into businesses while helping existing startups, and small businesses grow into thriving companies.

Prior to founding Florek Law Adam was *Counsel* at Peiffer Wolf Carr Kane Conway & Wise, LLP, a nationwide litigation firm that represents individuals and businesses in their pursuit of justice. At Peiffer Wolf, Adam led the firm's Biometric Information Privacy practice group and represented Individuals in civil and class-action litigation in various state and federal courts.

Before joining Peiffer Wolf, Adam was an Associate in Blank Rome's Chicago office with its Commercial Finance Litigation group. Adam clerked for the Hon. William J. Bauer of the U.S. Court of Appeals for the Seventh Circuit and the Hon. Charles R. Norgle of the U.S. District Court for the Northern District of Illinois.

Adam received his Juris Doctorate from the University of Illinois Chicago's John Marshall Law School where he was the Editor-in-Chief of the Journal of Information Technology & Privacy Law.  At John Marshall, Adam studied Transnational Legal Negotiation and Mediation at the University of Strathclyde Law School in Glasgow, Scotland and participated in John Marshall's Thirty-Second Annual International Moot Court Competition in Information Technology and Privacy Law.  Adam received his Bachelor of the Arts in Political Science from Purdue University with minors in History and Classical Studies.

Adam is a partner at Crassus Partners, LLC, a mergers & acquisitions brokerage and advisory firm.  He is Counsel for The Coalitions Opposing Government

Secrecy, a non-partisan 501(c)(3) focused on shedding light on government activities; an Advisor for GazaPassage, a non-partisan working group focused on helping non-combatants leave Gaza; and a member of the Board of Directors for re: UNITED Travel Inc., a 501(c)(3) organization that provides immersive overseas travel opportunities for youth in underserved communities.

## Representative Matters

Salvador Beltran, Jr. and Eli Gross v. Sony Pictures Entertainment, Inc. *d/b/a* Crunchyroll, Case No.: 1:22-cv-04858 (N.D. Ill.), appointed class counsel in a Video Privacy Protection Act case that resolved for $16,000,000.00;

Tylisha Allen v. Flanders Corporation, Case No. 2022-LA-154 (7th Cir., Ill.) appointed class counsel in a biometric privacy action that resolved for $2,225,700.00;

Jamie Whitlock v. Midwest Christian Villages, Inc. *d/b/a* Christian Horizons, Safe Haven Hospice, LLC, et al., Case No.: 2020L6 (11th Cir., Ill) appointed class counsel in a biometric privacy action that resolved for $2,142,000.00;

Whit Kennedy v. Cook County State's Attorney's Office, Case No.: 2023-CH-08490 (Cook Co. Cir.) represented Whitaker Kennedy, a veteran reporter, in his investigation into the Cook County State's Attorney's Office under Kim Foxx and successfully secured documents under Illinois Freedom of Information Act;

Athena Bitcoin, Inc. v. Genesis Coin, Inc., et al., Case No.: 1:2024cv05985 (N.D. Ill.) represented Athena Bitcoin, an international cryptocurrency services company, in its Computer Fraud and Abuse Act case that resolved to all Parties' satisfaction within three months of litigation;

Ashley Norwood v. Shippers Warehouse of Illinois, Inc., Case No.: 1:21-cv-00917 (N.D. Ill.), appointed class counsel in a biometric privacy action that resolved for $865,000.00;

Nicolasa Iribarren v. Kuehne + Nagel Inc., Case No.: 2021-ch-03661 (Cook Co. Cir., Ill.) appointed class counsel in a biometric privacy action that resolved for $839,325.00;

David Hubler v. Placesmart Agency *d/b/a* Nashville Material & Supply, LLC, Case No.: 2021-L-11 (20th Cir., Ill.) appointed class counsel in a biometric privacy action that resolved for $633,600.00;

Latisha Hyster v. Stearns Nursing and Rehabilitation Center, LLC; Case No.: 2020-L-417 (3rd Cir., Ill.) appointed class counsel in a biometric privacy action that resolved for $512,750.00;

Amy Newton v. Mission Care of Illinois, LLC; Case No.: 3:22-cv-02442-SMY (S.D. Ill.) appointed class counsel in a biometric privacy action that resolved for $499,000.00;

Michael Haenlein v. Remington Seeds, LLC, Case No.: 1:22-cv-02849 (N.D. Ill.) appointed class counsel in a biometric privacy action that resolved for $376,200.00;

Carina Cirillo v. United RX, LLC; Case No. 2022-LA-75 (1st Cir., Ill) appointed class counsel in a biometric privacy action that resolved for $380,700.00;

Melissa Melone v. General RV Center, Inc., Case No.: 2021-L-405 (16th Cir., Ill.), appointed class counsel in a biometric privacy action that resolved for $237,500.00;

Jacob Weeks v. Tricon Industries Manufacturing & Equipment Sales, Inc., Case No.: 2021-L-0032 (13th Cir., Ill.), appointed class counsel in a biometric privacy action that resolved for $75,120.00;

## Publications

Adam Florek, *The Problems with PRISM: How A Modern Definition of Privacy Necessarily Protects Privacy Interests in Digital Communications*, 30 J. MARSHALL J. INFO. TECH. & PRIVACY L. 571 (2014);

Adam Florek, et al., *The Thirty-Third Annual John Marshall Law School International Moot Court Competition in Information Technology and Privacy Law: Bench Memorandum*, 31 J. MARSHALL J. COMPUTER & INFO. L. 237 (2014);

Adam Florek, *Succession Planning and the Silver Tsunami*, CRASSUS PARTNERS, LLC, April 2024, *available at* https://www.linkedin.com/feed/update/urn:li:activity:7234065750666153985.



**Advice Counsel Advocay**
https://Florekllc.com

# EXHIBIT "B"



**ADAM WERNER** 1,3,6  **HEATHER HARTLEY** 1,6  **CHRISTOPHER STRATTON** 1,6,7
**MICHAEL HOFFMAN** 1,6,7  **PAIGE BARRETT** 1,6,7  **THADDAEUS COX** 1,6,7
**MATTHEW GREIG** 2,6,7  **MATTHEW WHITE** 4,6  **JACKY ARNOLD** 5
**BRENDAN GARCIA** 4,6,7  **ANTHONY AKIL** 1,7  **MARGARITA TAPIA** 1,3

3299 NW 2ⁿᵈ Ave, Boca Raton, FL 33431 ● 800-320-HELP ● WernerHoffman.com

## Curriculum Vitae

## WERNER, HOFFMAN, GREIG & GARCIA, PLLC

*Attorneys & Counselors at Law*

---

## Firm Overview

Werner, Hoffman, Greig & Garcia (WHG) distinguishes itself through a unique blend of legal expertise, military experience, and unwavering commitment to client advocacy. With over 125 years of collective legal practice, WHG represents individuals in personal injury, workers' compensation, veterans' disability, and Social Security Disability claims with precision, passion, and purpose.

Our team includes combat veterans and former military officers—attorneys who have not only walked the path of service but who now fight for the rights of those who have served. This firsthand experience informs every facet of our representation, allowing us to advocate with insight, empathy, and determination.

- **Veteran Advocacy by Veterans**: WHG's veteran attorneys possess a deep, personal understanding of the challenges faced by servicemembers and leverage this experience to secure meaningful results in VA disability claims.

- **Dedicated Practice Area Teams**: Each legal discipline within the firm is led by attorneys with focused experience, ensuring our clients receive tailored, strategic counsel.

- **Extensive Litigation Experience**: With thousands of successful recoveries and appeals, our attorneys are seasoned advocates in negotiation, litigation, and appellate practice.

- **Client-First Philosophy**: WHG is guided by a mission to provide exceptional legal service grounded in integrity, diligence, and respect. We believe every client deserves to be heard, empowered, and protected.

- **Proven Results**: WHG has represented more than 15,000 veterans and over 6,000 injured workers across the United States, demonstrating our national reach and consistent success.

---



| | |
|---|---|
| ADAM WERNER [1,3,6] | HEATHER HARTLEY [1,6]   CHRISTOPHER STRATTON [1,6] |
| MICHAEL HOFFMAN [1,6,7] | PAIGE BARRETT [1,6,7]   THADDAEUS COX [1,6,7] |
| MATTHEW GREIG [2,6,7] | MATTHEW WHITE [4,6]   JACKY ARNOLD [5] |
| BRENDAN GARCIA [4,6,7] | ANTHONY AKIL [1,7]   MARGARITA TAPIA [1,3] |

3299 NW 2nd Ave, Boca Raton, FL 33431  •  800-320-HELP  •  WernerHoffman.com

## SHAREHOLDERS

**Adam Werner, Esq.**

**Partner | Chair, Personal Injury & Workers' Compensation**
**Bar Admissions**: Florida, Texas

Adam Werner serves as managing partner and lead trial counsel for WHG's personal injury and workers' compensation divisions. A co-founder of the firm, Mr. Werner is known for his relentless advocacy and unwavering commitment to justice. He represents clients in complex litigation involving catastrophic injuries, workplace accidents, and insurance disputes.

**Education**

- B.A., Political Science – University of Florida
- J.D. – Nova Southeastern University, Shepard Broad College of Law

**Professional Distinctions**

- Member, Million Dollar Advocates Forum
- Member, Multi-Million Dollar Advocates Forum
- Recipient, Florida Justice Association Bronze Eagle Award
- Named one of the Top 100 Injured Workers' Attorneys in the Nation by WILG (2014)
- Former Chair, Young Lawyers Board, Florida Justice Association

**Notable Contributions**

- Instrumental contributor to the passage of the PACT Act in partnership with Iraq and Afghanistan Veterans of America (IAVA)

---

**Michael Hoffman, Esq.**

**Partner | Chair, Veterans' Disability & Government Benefits**
**Bar Admission**: Florida

Michael Hoffman is a decorated U.S. Navy combat veteran and VA-accredited attorney. He leads WHG's Veterans' Disability division and also represents clients in personal injury and Social



ADAM WERNER [1,3,6]
MICHAEL HOFFMAN [1,6,7]
MATTHEW GREIG [2,6,7]
BRENDAN GARCIA [4,6,7]

HEATHER HARTLEY [1,6]
PAIGE BARRETT [1,6,7]
MATTHEW WHITE [4,6]
ANTHONY AKIL [1,7]

CHRISTOPHER STRATTON [1,6]
THADDAEUS COX [1,6,7]
JACKY ARNOLD [5]
MARGARITA TAPIA [1,3]

3299 NW 2nd Ave, Boca Raton, FL 33431 ● 800-320-HELP ● WernerHoffman.com

Security Disability matters. Mr. Hoffman brings both legal acumen and military insight to his practice, zealously advocating for fellow veterans and the injured.

**Education**

- B.A., Political Science – University of Central Florida
- J.D. & LL.M. (Trial Advocacy & Dispute Resolution, with honors) – The John Marshall Law School

**Military Service**

- U.S. Navy, F/A-18 Hornet Squadron VFA-192 aboard the USS Kitty Hawk
- Combat Master Driver, U.S. Forces Afghanistan – Individual Augmentee Program

**Recognitions**

- "Sailor of the Year" – U.S. Navy
- Leadership Fellow – Iraq and Afghanistan Veterans of America
- VA Accredited Attorney

---

**Matthew Greig, Esq.**

**Partner | Veterans' Disability, Personal Injury, Workers' Compensation**
**Bar Admission**: Louisiana

Matthew Greig is a former Captain in the U.S. Army Judge Advocate General's Corps, where he served in both Iraq and Afghanistan as a legal advisor to senior military command. He brings a mission-driven approach to his practice, focusing on veterans' disability law and injury litigation.

**Education**

- B.S., Political Science – Millsaps College
- J.D. – Louisiana State University, Paul M. Hebert Law Center

**Military Service**

- XVIII Airborne Corps, JAG – Fort Bragg, NC
- Legal Advisor, Operation Iraqi Freedom & Operation Enduring Freedom
- Deployed with 101st Airborne Division; Operational Law Division Chief, Afghanistan



ADAM WERNER [1,3,6]      HEATHER HARTLEY [1,6]      CHRISTOPHER STRATTON [1,6]
MICHAEL HOFFMAN [1,6,7]   PAIGE BARRETT [1,6,7]      THADDAEUS COX [1,6,7]
MATTHEW GREIG [2,6,7]     MATTHEW WHITE [4,6]        JACKY ARNOLD [5]
BRENDAN GARCIA [4,6,7]    ANTHONY AKIL [1,7]         MARGARITA TAPIA [1,3]

3299 NW 2nd Ave, Boca Raton, FL 33431  •  800-320-HELP  •  WernerHoffman.com

- Advisor to British Forces during stability operations in Basra

**Professional Involvement**

- Trustee, VFW Post 8973 (New Orleans)

- Committee Member, PT-305 WWII Boat Restoration – National WWII Museum

- VA Accredited Attorney

---

**Brendan Garcia, Esq.**

**Partner | Veterans' Disability & Appellate Advocacy**
**Bar Admission**: North Carolina

Brendan Garcia is a U.S. Marine Corps veteran and one of the nation's leading attorneys in veterans' benefits litigation. A former official at the U.S. Department of Veterans Affairs and Presidential Management Fellow, Mr. Garcia has dedicated his legal career to advocating for veterans at all stages of the claims process, from Regional Offices to the Court of Appeals for Veterans Claims.

**Education**

- B.A., History – University of North Carolina at Greensboro

- J.D. – Elon University School of Law

**Military & Federal Service**

- U.S. Marine Corps (1999–2003); two deployments to the Middle East

- Legal Advisor, Board of Veterans' Appeals

- Former Presidential Management Fellow

- Roles in VA Office of General Counsel, Compensation Service, and Business Integration

**Founding Attorney** – VetLaw, a national firm dedicated exclusively to VA claims and appeals

**Credentials & Impact**

- VA Accredited Attorney

- Represented thousands of veterans in all 50 states



ADAM WERNER [1,3,6]
MICHAEL HOFFMAN [1,6,7]
MATTHEW GREIG [2,6,7]
BRENDAN GARCIA [4,6,7]

HEATHER HARTLEY [1,6]
PAIGE BARRETT [1,6,7]
MATTHEW WHITE [4,6]
ANTHONY AKIL [1,7]

CHRISTOPHER STRATTON [1,6]
THADDAEUS COX [1,6,7]
JACKY ARNOLD [5]
MARGARITA TAPIA [1,3]

3299 NW 2nd Ave, Boca Raton, FL 33431 • 800-320-HELP • WernerHoffman.com

- Appears before the Board of Veterans' Appeals and U.S. Court of Appeals for Veterans Claims

---

**Contact**

**Werner, Hoffman, Greig & Garcia, PLLC**
Offices: Florida | Texas | Louisiana | North Carolina
Website: **https://wernerhoffman.com/**
Phone: 855-374-1932
Email: **info@WernerHoffman.com**